## James Wright *v.* The State.

1. Practice — Evidence.— Unless part of the *res gestæ*, or part of a conversation put in evidence by the prosecution, the declarations of one conspirator in favor of his fellow are not admissible as evidence. Note suggestions of this court as to what matter should be embraced in bills of exception reserved to the rulings of the court below on the evidence.

2. Same.— When a party is first found in possession of recently stolen property, and his explanation is reasonable, natural and probable, the burden of showing its falsity is thrown upon the State. His statements in explanation are admissible in his own behalf if made when first arrested; and so, it seems, are such statements of his co-conspirator if made in his presence.

3. Same.— The indictment charged the theft of "one certain horse, the property of A," giving no further description, and the court permitted the witnesses to describe the horses of A found in defendant's possession. *Held*, that the court did not err. If the defendant had more than one of A's horses in his possession, and they were taken at or about the same time, the State could show it for the purpose of establishing identity in developing the *res gestæ*, or in making its proof by a chain of circumstances connected with the offense on trial, or for the purpose of showing motive or intent in the crime charged.

4. Practice.— When, as in this case, it appears that the court was limited to a single week in which to dispatch its business,— that one of its rules was to give preference to jail-cases,— and that the defend-

ant was the only person confined for trial (all others being on bail), this court will not reverse because he was forced to trial before others whose cases had precedence on the docket, unless it appears that he suffered injustice thereby.

5. EVIDENCE.— The question "from what you saw, did the defendant have as much to do with those horses as any body else?" was erroneously permitted, as leading and suggestive, and as calling for the opinion and conclusions of the witness.

APPEAL from the District Court of Kendall. Tried below before the Hon. T. M. PASCHAL.

The indictment charged the defendant and four others with the theft of "a certain horse, the property of G. E. Albee." The trial of this defendant resulted in his conviction, with five years in the penitentiary assessed against him as his punishment. The statement of facts is not certified by the trial judge.

*Tarleton & Boone,* for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

WHITE, P. J. One J. T. Walker and others were jointly indicted with appellant for theft of a horse, the property of Albee, but, upon motion of the defendant, when the case was reached for trial a severance was granted and appellant alone was placed upon trial. On cross-examination of the State's witness Reinhard, he was asked by defendant's counsel as follows: "You have stated that Walker make a statement, about ten minutes after the arrest of the defendants, in the hearing of defendant, explanatory of the possession of the horses alleged to have been stolen; please state what said statement was?" Which being objected to by the prosecution, the court would not allow the witness to testify as to said statement, and defendant reserved a bill of exceptions.

The general rule seems to be that "the declarations of

one co-conspirator in favor of a fellow conspirator cannot from the nature of things be put in evidence unless part of the *res gestœ* or part of a conversation put in evidence by the prosecution." Whart. Crim. Ev. (8th ed.) § 703. The bill of exceptions does not disclose whether the statement alluded to was drawn out on direct examination as part of a conversation between Reinhard and the co-defendant Walker, or not. It would always be more satisfactory if a bill of exceptions reserved to rulings upon evidence should be explicit in showing the facts as to how and in what manner the question arose, as well as in setting forth the evidence objected to, or what would have been the testimony excluded — so that this court may see and know everything necessary to a full understanding of the matter complained of.

In this instance, if the statement of Walker was *res gestœ* then it was admissible, and, being in presence of defendant, it was applicable to and could be availed of by one as well as the other party. When a party is first found in possession of property recently stolen, and his explanation of his possession is reasonable, natural and probable, the burden will be imposed upon the State to show that it is false. And when a similar question to the one under consideration arose in *Garcia* v. *State*, 26 Texas, 209, the court said: "The statement made in the presence of the appellant by Deal, who assumed the entire guilt if any offense had been committed, seems to be a reasonable and satisfactory explanation of the appellant's connection with and apparent joint possession of the property, and was sufficient, unless in some manner rebutted by the State, to have exonerated him from the presumption of guilt arising from his presence with it." A different rule, it seems, prevails in Georgia, and there such evidence has been held wholly inadmissible. *Lyon* v. *State*, 22 Ga. 399.

It would appear that Walker's statement was made within ten minutes after the arrest. This perhaps would

not be too long a lapse or interval of time to place it be-
yond the bounds of *res gestœ.* A defendant's statements
explanatory of his possession, when first arrested, are ad-
missible evidence in his behalf. *Shackleford* v. *State*, 43
Texas, 138; *Hannah* v. *State*, 1 Texas Ct. App. 578;
*Shackleford* v. *State*, 2 Texas Ct. App. 385; *Hampton* v.
*State*, 5 Texas Ct. App. 463. As *res gestœ*, we are of
opinion defendant was entitled to the testimony.

There was no error committed in permitting the wit-
ness to describe the horses found in possession of defend-
ant and belonging to Albee. Defendant was charged by
the indictment with the theft " of one certain horse," the
property of Albee, and no description was given of said
horse. If he had in his possession more than one horse
of Albee, and they were taken at or about the same time,
the State was entitled to show the fact, if necessary to
establish identity in developing the *res gestœ*, or in mak-
ing out the guilt of defendant by a chain of circum-
stances connected with the crime for which he was on
trial, or for the purpose of showing the motive or intent
with which the particular act charged was done. *Gil-
braith* v. *State*, 41 Texas, 567; *Webb* v. *State*, 8 Texas Ct.
App. 115; *Hardin* v. *State*, 8 Texas Ct. App. 653;
*Speights* v. *State*, 1 Texas Ct. App. 551.

Nor was there error in the court's calling and disposing
of this case out of its regular order, or without disposing
of cases preceding it on the docket. Ordinarily such
procedure would be error, perhaps. *Thomas* v. *State*,
36 Texas, 315. In this instance, however, the defendant
was in jail and the only prisoner in the jail—parties in
all of the other cases being on bail—and the term of the
court was limited to a single week, and it was a rule of
the court to give preference in trial to jail cases; and very
properly we think. Under such circumstances, without
great injustice is shown by such procedure, this court
will not reverse a judgment upon such ground. *Nichols*

v. *State,* 3 Texas Ct. App. 546; *Hampton* v. *State,* 5 Texas Ct. App. 463; *Jones* v. *State,* 8 Texas Ct. App. 648.

We are of opinion, however, that the court erred in overruling defendant's objection to the following question propounded by the prosecution to one of the State's witnesses, viz.: "From what you saw, did the defendant Wright seem to have as much to do with those horses as any body else?" The question was leading, and suggestive to the witness of the answer desired. Furthermore, it sought and elicited from the witness his opinion and conclusion from what he saw, without confining him to a statement of the facts, and leaving the inference and conclusions to be deduced from the facts by the jury.

Many other errors are complained of, which, in the absence of a statement of facts, cannot be considered or determined, and most of them are not likely to arise on another trial. Without a statement of facts it is impossible for us to determine whether the court should have charged on circumstantial evidence and upon the law with regard to the removal of stock from its accustomed range. The bills of exception do not make manifest the necessity of such charges, in the absence of a statement of facts.

For the errors above indicated, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*